UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTY STANLEY,

       **Movant,**                                **Case No. 8:21-cv-1919-MSS-TGW**

**v.**                                      **Crim. Case No. 8:20-cr-48-MSS-TGW**

UNITED STATES OF AMERICA,

       **Respondent.**

_____/

## O R D E R

Stanley moves to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 (Doc. 1), the United States responds (Doc. 5), and Stanley replies. (Doc. 10) After reviewing these documents and the record in the criminal action, the Court **DENIES** Stanley's motion.

## PROCEDURAL HISTORY

An information charged Stanley with wire fraud in violation of 18 U.S.C. § 1343. (Crim. Doc. 1) Stanley pleaded guilty pursuant to an agreement with the United States. (Crim. Doc. 3) The United States recommended a downward adjustment for acceptance of responsibility. (Crim. Doc. 28 at 1) Stanley faced an advisory sentencing guideline range of thirty-three to forty-one months in prison. (Crim. Doc. 47 at 6) Stanley moved for a downward departure and requested a sentence of probation with house arrest. (Crim. Doc. 36 at 2) After hearing argument and reviewing evidence submitted by the parties, this Court departed downward and sentenced Stanley to thirty months in prison, followed by three years of supervised release. (Crim. Doc. 47 at 36) Stanley appealed but voluntarily dismissed her direct appeal. (Crim. Doc. 58)

In the plea agreement, the United States and Stanley stipulated to the following facts

(Crim. Doc. 3 at 18–21):

> At all times material to the Information, the defendant, a resident of New Port Richey, in the Middle District of Florida, and a licensed title agent, worked for a title company (hereinafter, "FTS"). The defendant managed the company's New Port Richey office and served as a title closer for real estate transactions. FTS maintained an escrow account at Valley National Bank for real estate transactions handled by its New Port Richey office, and the defendant was authorized to initiate, send, and receive wires of funds in connection with her duties.

> From in or about June 2018, and continuing through and including in or about October 2018, the defendant devised a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent representations, utilizing wire transmissions of funds in interstate commerce. Specifically, the defendant entered into an online romantic relationship with another individual using the name "Andrei Aurel," who represented that he was living and working outside of the United States and that he wanted to relocate to the United States to be with the defendant. The defendant agreed to provide financial assistance to Andrei Aurel in an effort to facilitate his relocation to the United States and thereby foster the growth of the relationship.

> The defendant made false and fraudulent use of her access and authority to initiate and send wires from FTS's escrow account to transfer funds for the benefit of Andrei Aurel. She accessed FTS's escrow account at Valley National Bank and initiated wires destined for accounts in various names at other financial institutions, in accordance with wiring instructions provided to her by Andrei Aurel. Then she transmitted text messages to the owner and/or another title closer in FTS's Clearwater office to request approval of the wires she had initiated, which requests were in accordance with FTS's procedure for approving wires to be sent in connection with closings of real estate transactions. In so doing, the defendant led FTS's owner and, more often, another title closer to believe that the wires she had initiated were legitimate and necessary to close real estate transactions being handled by FTS's New Port Richey office and, thereby, caused them to approve the wires in the Valley National Bank online system.

The defendant's actions caused Valley National Bank to wire funds from FTS's escrow accounts to accounts in various names at other financial institutions, in accordance with wiring instructions provided to the defendant by Andrei Aurel. In particular, on or about September 12, 2018, the defendant caused Valley National Bank to transfer $35,000, via wire, from FTS's escrow account to the BB&T account ending in 1232 in the name of "Frank O. Nani." The defendant caused Valley National Bank to transmit a total of 16 wires in the aggregate amount of $618,101.33.

When FTS's owner discovered the funds missing from the escrow account and confronted the defendant about them, the defendant concocted a false story to explain what had happened. On October 5, 2018, an FBI agent questioned the defendant about the funds missing from FTS's escrow account. In response, the defendant told the agent that some investors had asked her to hold approximately $500,000 in escrow pending the closing of a real estate transaction, that she had received four cashier's checks totaling approximately $500,000 from the investors, and that the wire transactions in question represented the return of the $500,000 to the investors. At the time the defendant made these statements, she knew that they were false. In truth, the defendant knew that the wire transactions in question represented funds placed in escrow by FTS clients and that she had stolen the funds and transmitted them to accounts identified by Andrei Aurel for the purpose of facilitating his relocation to the United States and thereby fostering the growth of her relationship with Aurel.

After reviewing the presentence report and a psychological evaluation submitted by trial counsel and hearing argument by the parties, the Court imposed the below-guideline thirty-month sentence for the following reasons (Crim. Doc. 47 at 36–40):

[Court:]          Ms. Stanley, the Court has considered the parties' arguments. I've looked at the background and history of this case. I've considered Title 18, United States Code, Section 3551 and 3553. In accordance therewith, it is the judgment of this Court that this defendant, Christy A. Stanley, is hereby committed to the custody of the Bureau of Prisons to be incarcerated for a term of thirty months.

. . .

> To the extent that this is a slight variance, it is to take into account the defendant's background and history as described in the [presentence report] and the statements [in] the psychiatric evaluation that was provided in this case.
>
> The Court declines the level of reduction the defendant [requests] in order to provide proper punishment for the nature of this conduct and to deter future conduct of this type by this defendant or any other who might be observing these proceedings.
>
> The Court finds this conduct was particularly sophisticated in this case. The defendant may have been misled by this individual on the other line — on the other end of these transactions, but she had plenty of time to reflect in the course of making these decisions to engage in these transactions and at some point the Court believes she knew what she was doing was wrong because of the nature of her concealment of it from her employers and it just doesn't — her explanation just doesn't ring completely true with the nature of the conduct behind her explanation.
>
> The Court has accepted the plea, because I am satisfied that it adequately reflects the seriousness of the actual behavior and accepting it will not undermine the statutory purposes of sentencing.

In her Section 2255 motion (Doc. 1 at 3–8), Stanley asserts that trial counsel was ineffective (1) for failing to call character witnesses at sentencing who would have testified about her background and reputation (Ground One) and (2) for failing to represent her best interests during sentencing. (Ground Two) Stanley attaches to her Section 2255 motion letters

4

from four individuals, Thomas Hayter, Janet Goebel, Kathy Faucett, and Dawn Feldpausch, whom she contends trial counsel should have called at sentencing. (Doc. 1-1 at 14-17) Stanley contends that each witness would have testified at sentencing consistently with what the witness stated in his or her letter. (Doc. 1 at 4–7) The United States concedes that the motion is timely but asserts that the claims are meritless. (Doc. 5)

## STANDARD OF REVIEW

Stanley asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

5

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## MERITS

### Ground One

Stanley asserts that trial counsel was ineffective for not calling Thomas Hayter, Janet Goebel, Kathy Faucett, and Dawn Feldpausch to testify at sentencing about her background and reputation. (Doc. 1 at 4) She submits sworn and unsworn letters by the four witnesses (Doc. 1-1 at 1–4) to summarize how each witness would have testified at sentencing. She contends that if trial counsel had presented testimony by the character witnesses, she would have received a lower sentence. (Doc. 1 at 4)

### Thomas Hayter

Hayter, Stanley's father and a disabled veteran, describes Stanley as his "lifeline" because she cooks, cleans, and gives him his medication. Hayter admits that, when Stanley was a child, she cared for her brothers because Hayter was an alcoholic. (Doc. 1-1 at 1) Hayter believes that someone took advantage of Stanley. (Doc. 1-1 at 1) Hayter would have asked for a lenient sentence for Stanley because she accepted responsibility, her family desperately needs her support, and she would try to correct her wrongdoing. (Doc. 1-1 at 1)

### Janet Goebel

Goebel, a manager for a financial company who has known and worked with Stanley in the financial industry for over twenty years, states that Stanley always treated clients and

employees professionally and ethically and describes Stanley as a dedicated employee. (Doc. 1-1 at 2) Goebel further states that Stanley is a good, kind, and generous person who "possesses a great deal of integrity and constantly strives to make sure she is doing the right thing." (Doc. 1-1 at 2)

**Kathy Faucett**

Faucett, who worked for and with Stanley, states that Stanley is a loving and dependable person with a detail-oriented work ethic and respect for complying with rules. Faucett further states that Stanley provides support to her family and made an "honest mistake" because she would not put her family at risk of losing her. (Doc. 1-1 at 3)

**Dawn Feldpausch, LCSW**

Feldpausch, a licensed clinical social worker, and Stanley's therapist, states that she treated Stanley weekly for a month. During that treatment, she learned the details of Stanley's criminal case, her role as a caretaker for her two minor children and her father, and her diagnoses of major depressive disorder and other chronic illnesses. (Doc. 1-1 at 4) Feldpausch opined that, because Stanley maintained employment, complied with all conditions of bond, regularly paid restitution, and cared for her minor children and her father, home confinement instead of incarceration was an appropriate punishment. (Doc. 1-1 at 4)

Stanley contends that this Court would have been receptive to testimony by the witnesses concerning her background and reputation and that, if trial counsel had presented testimony by the witnesses at sentencing, there is a "reasonable probability that the court would have imposed a less severe sanction." (Doc. 1 at 7)

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." *Waters v. Thomas*, 46

F.3d 1506, 1512 (11th Cir. 1995). "Th[e] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'" *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (citation omitted). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Stanley's claim fails because the proposed testimony by the witnesses is cumulative of other evidence presented before and during sentencing. The presentence investigation report and psychological evaluation, presented to the court before sentencing, summarize the information in the letters by Hayter, Goebel, and Faucett.

**Background, Mental and Physical Illness, and Family's Need for Support**

In his letter, Hayter describes his need for Stanley to provide care (Doc. 1-1 at 1):

> She is my lifeline. I am a 100 percent disabled veteran. Without her I would not be able to care for myself. She cleans, cooks, and takes care of my medication. I depend on her to remind me and take me to the doctor appointments and do the shopping.

> [S]he has always been the caretaker. She raised her brothers because to be honest I was an alcoholic. She had to step up and be the mother, cook, and maid.

> She is my only daughter; I depend on her so much. Her girls depend on her. I trust her with everything.

Before sentencing, the Court learned about Hayter's need for Stanley to provide care in the presentence report:

> The defendant described her childhood as "hard" for several reasons including, but not limited to the following. When she

was approximately two years old, her parents divorced. Resultantly, the defendant moved frequently because she and her siblings were raised by her parents and extended family members. However, there were times when the defendant had intermittent contact with her parents because her father was "an alcoholic" and her mother was "chasing men." The defendant advised that she raised and took care of her brothers.

(Crim. Doc. 26 at 10)

Mr. Hayter described the defendant as "an honest person, a very good person who is well-liked and always helpful." He stated he is one-hundred percent disabled, and the defendant cleans his house, arranges his medication, and cooks dinner for him. Mr. Hayter also stated the defendant's pending federal case has impacted the family emotionally, and he thinks "she is getting railroaded."

(Crim. Doc. 26 at 12)

In their letters, Goebel, Faucett, and Feldpausch describe how Stanley cares for her family and suffers from physical and mental illness:

In recent years Christy [Stanley] has gone through many tough times with her family, caring for her ailing father and with numerous health issues. Her health issues have caused her physical pain and emotional anxiety, but she continues to persevere and take care of her family.

(Doc. 1-1 at 2) (Goebel's letter)

Christy is a great mom and is always there for her family. She has always been her famil[y's] support system. They depend on her greatly.

(Doc. 1-1 at 3) (Faucett's letter)

Christy has been diagnosed with Major Depressive Disorder along with other chronic illnesses. Christy is also the main care giver and provider of two minor children in her home as well as a caregiver for her father.

(Doc. 1-1 at 4) (Feldpausch's letter)

Before sentencing, the Court learned about how Stanley cared for her family and about her physical and mental illness from the presentence report:

> In April 2020, the defendant rented a house [ ]. Stanley reported that she resides with her two minor children [ ] and their four pets [ ].
>
> (Crim. Doc. 26 at 11)
>
> Stanley stated her 17-year-old daughter [ ] is concerned about the prospect of the defendant going to prison because Shelby's father lost his parental rights. The defendant advised that her 8-year-old daughter [ ] is also worried, but she won't discuss the defendant's pending case.
>
> (Crim. Doc. 26 at 12)
>
> The defendant reported the following prior and current health concerns. At approximately age 13, she started suffering from migraines for which she is prescribed Sumatriptan. In about 2012, she had her gall bladder removed. In approximately 2011, she was diagnosed with hypothyroidism, for which she is prescribed Levothyroxine and with high blood pressure, for which she is prescribed Metoprolol and Amlodipine. In approximately 2015 or 2016, she had surgery on her left ankle which she broke in a motorcycle accident resulting in her hospitalization for two or three days. Subsequently, she wore a boot for approximately three months. She occasionally suffers from pain and swelling in her ankle. In about 2015 or 2016, she was in a car accident resulting in three herniated discs in her neck and an injury to her left arm. As a result of these injuries, she experiences headaches and limited mobility and pain in her arm.
>
> (Crim. Doc. 26 at 12)
>
> In approximately 2019, she was diagnosed with anxiety for which she was prescribed Trazadone. Her anxiety has worsened due to her pending federal case. She has experienced suicidal ideations throughout her life and these thoughts increased in 2019. Resultantly, she attempted suicide by taking Valium and other pills in approximately September 2019.
>
> . . .

> On June 17, 2020, the defendant underwent a psychiatric evaluation at Personal Enrichment through Mental Health Services in Pinellas Park, Florida. Stanley was diagnosed with severe, recurrent, major depression without psychosis and a generalized anxiety disorder.

> (Crim. Doc. 26 at 13)

Also, before sentencing, trial counsel submitted a psychological evaluation that further

described Stanley's physical and mental illness (Doc. 12 at 3):

> Ms. Stanley reported that she has asthma, hypertension and thyroid problems and is prescribed Amlodipine, Levothyroxine, Metoprolol and an inhaler. She was involved in motor vehicle accidents in 2012 and 2015 and [ ] had a motorcycle accident in 2018. She was treated at Trinity Medical Center for herniated discs in her neck in 2015 and subsequently in 2018 after the motorcycle accident. She was prescribed Percocet in 2018. Regarding psychiatric issues, Ms. Stanley reported that she has been diagnosed with Anxiety Disorder and Posttraumatic Stress Disorder and is prescribed Zoloft, Prazosin and Clonazepam. She has been prescribed Cymbalta in the past.

During sentencing, trial counsel argued for a mitigated sentence based on Stanley's

background, physical and mental illness, and her family's need for her support (Doc. 47 at

19-20):

> [Trial counsel:]        Ms. Stanley has had a rough go of it in life, as I've indicated in my sentencing memorandum, really striking out on her own at an early age, being a parent to her siblings at an early age as well. She's been in abusive relationships, abused by her father's friends as well, and I suggest, and this is what I gleaned from representing Ms. Stanley, the investigation in this case, as well as the psychological report, she is easily manipulated, lacks self-esteem, and that contributed to her lack of judgment in this case and stealing money from her employer, FTS. She has a history of mental health issues, suicide, attempted suicide, depression, anxiety, a [prescription for]

> numerous mental health drugs, some drug
> abuse as well, and that's documented in the
> PSI, paragraphs 54 through 58. Drug abuse
> is documented as well, 59 through 61.

Because the presentence report and the psychological evaluation describe the information in the letters concerning Stanley's background, mental and physical illness, and her family's need for her support, and trial counsel relied on that information at sentencing to argue for a mitigated sentence, Stanley does not demonstrate prejudice under *Strickland*. *Dallas v. Warden*, 964 F.3d 1285, 1310 (11th Cir. 2020) ("The long and short of it is, as we've said before, that 'no prejudice can result from the exclusion of cumulative evidence' . . . .") (citation omitted). *Accord Holsey v. Warden, Ga. Diag. Prison*, 694 F.3d 1230, 1260–61 (11th Cir. 2012) ("[T]he United States Supreme Court, this Court, and other circuit courts of appeals generally hold that evidence presented in postconviction proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury.") (citation omitted).

**Reputation for Honesty and Professional Reputation**

In his letter, Hayter describes Stanley's reputation for honesty (Doc. 1-1 at 1):

> She is not a thief [and] she was taken advantage of and was
> vulnerable. She has accepted her responsibility and she is trying
> hard to make up for it. She is working, taking care of her family
> and doing everything she can to try to make it right. I am begging
> you to not take her away from us as we need her to be able to
> survive.

Goebel further describes Stanley's professional reputation (Doc. 1-1 at 2):

> During the years that [Stanley] and I worked together[,] I found
> her to always be professional and ethical toward employees and
> clients alike. She was always motivated and dedicated to the
> companies and fiercely protected the companies in all aspects of

her work performance. We worked for many years together in the title and escrow business as co-workers and as my manager.

On a personal[ ] level [Stanley] is, in short, a good person. She has always been kind and generous with others and goes out of her way to help others in need. [Stanley] has a strong sense of duty, which applies to her job, family, and community. She also possesses a great deal of integrity and constantly strives to make sure she is doing the right thing.

Faucett also describes Stanley's professional reputation (Doc. 1-1 at 3):

[Stanley] is a very loving, caring, dependable person. As a manager she has always been very detail oriented and knows her job. [She] has always done her job according to the rules, regulations[,] and guidelines. [She] has always had a great work ethic and takes pride in her work.

Stanley pleaded guilty, admitted that she stole $618,101.33 from FTS, and admitted that she lied to her supervisors and to the FBI when questioned about the theft. (Doc. 3 at 18–19) Also, the probation officer submitted victim impact statements by the owners and employees of FTS, who asked the Court to impose a prison sentence because of the significant financial and emotional harm that Stanley caused them. (Crim. Doc. 26 at 21–35) Because both Stanley's admission of guilt and the victim impact statements would have firmly rebutted the witnesses' testimony concerning Stanley's honest and ethical reputation, Stanley cannot demonstrate prejudice under *Strickland*. *See, e.g.*, *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) ("[T]o establish prejudice, Belmontes must show a reasonable probability that the jury would have rejected a capital sentence after it weighed the entire body of mitigating evidence (including the additional testimony Schick could have presented) against the entire body of aggravating evidence (including the Howard murder evidence).").

### Feldpausch's Letter

Stanley's sentencing occurred on October 1, 2020. (Doc. 47 at 1) Feldpausch states that she treated Stanley starting "since the middle of January 2021." (Doc. 1-1 at 4) Because Feldpausch would not have been available to testify at Stanley's sentencing about her treatment of Stanley almost four months after the sentencing, Stanley fails to state a claim. *Day*, 566 F.3d at 538.

At sentencing, when imposing the thirty-month below-guideline sentence, this Court expressly relied on "[Stanley's] background and history as described in the PSR and the statements of the psychiatric evaluation that was provided in this case." (Crim. Doc. 47 at 39). The Court "decline[d] the level of reduction [Stanley] [requested] in order to provide proper punishment for the nature of [her] conduct and to deter future conduct of this type by this defendant or any other [individual] who might be observing these proceedings." (Crim. Doc. 47 at 39)

The record demonstrates that the Court carefully considered the factors under Section 3553(a) before imposing the sentence. The Court declined to depart downward any further because of the aggravated nature of Stanley's criminal conduct and the need to deter future conduct. 18 U.S.C. § 3553(a)(1), (a)(2). Because Stanley fails to demonstrate a reasonable probability that the outcome would have changed at sentencing if trial counsel had presented the testimony by the four witnesses, her claim fails. *See Raulerson v. Warden*, 928 F.3d 987, 999 (11th Cir. 2019) ("A petitioner cannot establish that the outcome of the proceeding would have been different when '[t]he new evidence largely duplicated the mitigation evidence at trial.' And '[t]o the extent the state habeas record includes new . . . evidence,' that evidence cannot prove prejudice when it is of 'questionable mitigating value.'") (citations omitted).

In her motion, Stanley states that "she insisted on calling each of the four witnesses, but counsel refused." (Doc. 1 at 4) Attached to the United States' response is an affidavit by trial counsel who states that he "explained to Ms. Stanley that any and all witnesses she wanted to appear at sentencing and speak on her behalf were welcome and anyone could write letters of support on her behalf." (Doc. 5-1 at 6) Because the record refutes prejudice under *Strickland*, the Court need not resolve this factual dispute concerning trial counsel's deficient performance. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Ground One is **DENIED**.

**Ground Two**

Stanley asserts that trial counsel was ineffective for not representing her best interests at sentencing. (Doc. 1 at 8) Stanley contends that trial counsel advocated for a harsher sentence by presenting the following arguments. (Doc. 1 at 8)

**"Duty Bound" to Request Probation**

Stanley contends that trial counsel advocated for a harsher sentence (Doc. 1 at 8) by arguing that he was "duty bound" to request a sentence of probation (Crim. Doc. 47 at 18) (bolding added):

> [Trial counsel:]   Judge Scriven, you determined the Guidelines to be thirty-three to forty-one months in this case. **I am duty bound by** the Florida Rules of Professional Conduct to ask you on behalf of my client for a sentence of probation with house arrest. Ms. Stanley makes that request because she says that she would like to start paying the restitution owed in this case, which is a substantial amount of money, a half a

> million dollars owed in this case as a result
> of her conduct in this case, which she
> became involved in an online relationship
> with an Andrei Aurel.

Reasonable, experienced counsel would have recognized how unlikely the Court would have granted the request for a sentence of probation with house arrest, given the aggravated nature of the crime against Stanley's employer and the aggravated amount of loss totaling $618,101.33. (Crim. Doc. 3 at 18–21) However, "a lawyer must abide by a client's decisions concerning the objectives of representation, and . . . must reasonably consult with the client as to the means by which they are to be pursued." R. Reg. Fla. Bar 4-1.2(a). *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). Because trial counsel did not want to jeopardize his credibility before the Court but also wanted to abide by Stanley's request for probation, trial counsel did not deficiently perform. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("The reasonableness of a counsel's performance is an objective inquiry. And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.") (citations omitted).

**Stanley "Should Have Known Better"**

Stanley contends that trial counsel advocated for a harsher sentence (Doc. 1 at 9) by arguing that Stanley "should have known better" (Crim. Doc. 47 at 18–19) (bolding added):

> [Trial counsel:] But in any event, **Ms. Stanley should have known better**. You see the two-level enhancement for abuse of trust. As Mr. Hayslett and Mr. Cash pointed out it is readily obvious, they trusted Ms. Stanley and gave her carte blanche authority to handle the affairs of the New Port Richey office and, as a result of this relationship with this Andrei Aurel, she did in fact take

16

> money belonging to First Title Insurance — First Title Source, rather, and gave that to Mr. Aurel, who according to the PSI was trying to get into the United States to continue the relationship with Ms. Stanley. **She should have known better and now she must pay the price.**

A court may vary from the sentencing guideline range based on "the history and characteristics of the defendant," which includes remorse (or lack of remorse) for committing the crime. 18 U.S.C. § 3553(a)(1). *United States v. McNair*, 605 F.3d 1152, 1231 (11th Cir. 2010). During her allocution, Stanley accepted responsibility by stating: "I know what I did was wrong. I did it. I accept full responsibility for what I did." (Crim. Doc. 47 at 24) By admitting that Stanley "should have known better," trial counsel reasonably acknowledged that Stanley accepted responsibility for her actions and agreed that she should receive some punishment. Also, just before presenting the above-quoted argument, trial counsel requested a sentence of probation with house arrest. (Crim. Doc. 47 at 18–19) By admitting that Stanley "should have known better" and "now [ ] must pay the price," trial counsel reasonably informed the Court that Stanley did not intend to deny responsibility for her actions by requesting the non-incarcerative sentence. *Chandler*, 218 F.3d at 1315.

**Guideline Sentence Not Substantial**

Stanley contends that trial counsel advocated for a harsher sentence by arguing that a guideline sentence of thirty-three to forty-one months was not substantial. (Doc. 1 at 9) However, the sentencing transcript shows that trial counsel told the trial judge that a guideline sentence was substantial (Crim. Doc. 47 at 19) (bolding added):

> [Trial counsel:]   And she's looking at from her position a **substantial prison sentence** of thirty-three to forty-one months. She's asking the Court to allow her to avoid prison, **stay**

> **home**[,] and pay towards the restitution
> owed in this case.

Stanley further contends (Doc. 1 at 9) that trial counsel advocated for a harsher sentence by arguing that her offense was "not . . . to be taken lightly" (Crim. Doc. 47 at 19) (bolding added):

> I point out, Judge Scriven, that she is not a frequent customer, as the Court is aware, of the federal or really any criminal system, but certainly the federal criminal system. She's not a Criminal History Category V, V or even VI. In fact, she has zero criminal history points. It's a white-collar offense. **Not that it's to be taken lightly**, but we have individuals who have been harmed as a result of her conduct in this case.

Trial counsel argued that the "white-collar offense" was "[n]ot [ ] to be taken lightly" to respond to evidence of harm that FTS suffered because of the crime. Before trial counsel presented this argument, the owner of FTS testified about the significant harm that Stanley caused him, his employees, and his company. (Doc. 47 at 8–12, 13–17) Because trial counsel did not want to jeopardize his credibility before the Court—and by extension, his client's, he qualified his statements about the nature of the "white collar" offense by acknowledging that Stanley's criminal conduct had caused serious harm. Reasonable, experienced counsel would have presented this argument to demonstrate that Stanley acknowledged the harm and seriousness of the offense. *Chandler*, 218 F.3d at 1315.

### Advocating for a Different Outcome

Stanley contends that trial counsel advocated for a harsher sentence (Doc. 1 at 9–10) by requesting a sentence sufficient to "send a message to society that crime does not pay" (Crim. Doc. 47 at 21–22) (bolding added):

| [Trial counsel:] | All right. Judge Scriven, so that's her first request. My request would be, I know that the 3553(a) factors talk about punishment and punishment being imposed to deter criminal conduct. I think that's one of the major issues before the Court today in making these gentlemen whole, **sending a message to society that crime does not pay**. Thirty-three to forty-one months, I would suggest to the Court that when you look at Ms. Stanley, the whole picture regarding Ms. Stanley, we're asking the Court for some type of downward variance in this case that would accomplish all the factors at 3553(a) and still allow payment of restitution, which is a 33 — 3553(a) factor. And that is our request of the Court. |
|---|---|

Trial counsel did not advocate for a sentence sufficient to "send a message to society that crime does not pay," but instead responded to statements by the owner of the company requesting punishment. Before trial counsel presented this argument, the owner of the company testified and asked the Court to punish Stanley (Crim. Doc. 47 at 12–13):

| [Court:] | And are you asking for an incarcerative sentence for her? |
|---|---|
| [Owner:] | I'm asking, Judge, for — Joe and I are asking for what is — for, you know — we're asking that you sentence her according to the crimes that she committed and according to the law. Her stepping up and admitting guilt, you know, that ship has already sailed. You know, she would have been found guilty anyhow. So I'm asking you, Judge — you know, we are asking you, I'm speaking on behalf of the company, for the lives that she impacted, for the financial ruins that she's left, she needs to pay those consequences. |

By presenting the above-quoted argument, trial counsel acknowledged this demand for punishment by the owner of the company and carefully argued that a downward variance

from the guideline sentence could both "afford adequate deterrence to criminal conduct" and address "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(2)(B), (a)(7). Reasonable, experienced counsel would have explained how the sentencing court could still vary downward to achieve Stanley's request for a lesser sentence. *Chandler*, 218 F.3d at 1315.

Even if trial counsel deficiently performed, Stanley could not demonstrate prejudice under *Strickland*. Before and during sentencing, trial counsel advocated for a probationary sentence. Before sentencing, trial counsel submitted a sentencing memorandum and identified factors under Section 3553(a), including the nature and circumstances of the offense, Stanley's history and characteristics, the need for adequate deterrence, and the need to pay restitution, to argue that a probationary sentence was appropriate. (Crim. Doc. 36 at 12)

During sentencing, trial counsel also described mitigating evidence in the psychological evaluation and the presentence report to argue that a probationary sentence was fair and just. (Crim. Doc. 47 at 18) Relying on that mitigating evidence and the factors under Section 3553, this Court imposed the below-guideline thirty-month sentence. (Crim. Doc. 47 at 36) The Court declined to depart downward any further because of the aggravated and sophisticated nature of the criminal conduct and to deter future conduct. Because Stanley does not demonstrate a reasonable probability that, if trial counsel had not presented the above-quoted arguments, the outcome would have changed at sentencing, her claim fails. *Strickland*, 466 U.S. at 694.

Ground Two is **DENIED**.

Accordingly, Stanley's Section 2255 motion (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Stanley, **DOCKET** a copy of this Order in the criminal action, and **CLOSE** this case.

### DENIAL OF A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Stanley neither makes a substantial showing of the denial of a constitutional right nor shows that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on October 17, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE